## LENINGTON vs. CAMPBELL.

JEFFERSON.
April, 1817.

Lenington
v.
Campbell.

Part performance does not take a case out of the statute of frauds.

PETITION IN CHANCERY, setting forth: that on the 5th day of April, 1815, the plaintiff agreed and contracted with the defendant, to lease of him a tract of land; that by the contract, plaintiff was to take immediate possession and to improve and live on it five years, and for such use and improvement was to clear twenty-five acres, &c.; that defendant promised to make a written lease as soon as he had time to draw the writing; that the plaintiff went into possession and made improvements; that the defendant neglected and refused to make a lease, and hath caused him to be removed by proceedings under the act against forcible entry and detainer, and hath put him to costs; and praying to be restored to possession of the land, to be repaid the costs expended, and to have the lease executed to him or to be decreed a compensation in damages.

PLEA—The act for the prevention of frauds and perjuries.

GOODENOW, for complainant.

WRIGHT, for defendant.

PRESIDENT.—The complainant has been removed from the possession of the defendant's land, because he could shew no legal right to such possession; and notwithstanding such removal is correct and proper by the law, as it is construed in the courts of law, he makes this application in chancery for relief, on the avowed principle that the same laws must receive a construction diametrically opposite, by the same judges when sitting in chancery, to what they have received in a court of law; that although it very plainly appears, from his own statement of his case, that he could not maintain any action at law, to recover possession of the land; yet that such statement is abundantly sufficient to warrant a court of chancery in awarding to him such possession. It must strike every man of plain common sense, that a system of jurisprudence which sanctions such proceedings must be grossly absurd, if not iniquitous; but this absurdity and contradiction does in many cases exist in the rules and principles which govern the decisions of the courts of law and chancery. The system has been adopted, practised upon, and become naturalized, in America, for no other apparent reason than because it had grown up into use, practice, and law, in England—and if this is an evil, it has become so inveterate,

so interwoven with the provisions of our constitution and laws themselves, that it requires the higher powers of government to remedy it. We who are bound to judge according to the rules of law in actions at law, are equally bound to judge according to the rules and principles of equity in suits in equity; and however we may regret that contrary decisions are induced upon the same facts and the same law, when brought before us in different forms, and wish that the principles of equity were allowed to be fully adopted in the administration of law, so that consistent with its established or improved forms, right and justice might be done in all cases; yet while the form of proceeding, by bill in equity, does in some cases entitle the suitor, according to established usage, to a construction of the law, and to a remedy, which could not be obtained by common law process, it will be our duty to give such construction, and grant such remedy, in the case before us, if the complainant's right thereto is clearly made out, and his case is one " properly cognizable by a court of chancery, in which plain, adequate, and complete remedy cannot be had at law." But unless it be so clearly made out, and his right to the relief sought for, be established as *the law of this court,* he must be left to the ordinary legal remedy. That the complainant states a case entitling him to a remedy, and that the one he asks is the most obviously just in the individual instance, may be conceded. It will then remain to enquire whether it is properly cognizable in a court of chancery, and whether chancery can give any other and further relief than can be obtained at law.

The right to possess and use real estate, has, for a long course of years, been treated by legislators, as one requiring greater solemnities for its verification than a right to possess and use personal property. From the corporeal investiture of feudal times, until the forms of conveyance introduced by the operation of the statute of uses had become the established mode of transferring the possession of real estate, the law has always regarded something more solemn as requisite, than such mere parole delivery as would vest a personal chattel in the donee or bargainee—but until the statute of frauds and perjuries, the transfer of real estate by parole, if the act of livery accompanied it, was lawful though it had long been disused. By this act, (which took effect, in this state, on the 1st of June, 1810,) it is enacted, section 4th, " That no leases, estates, or interests, either of freehold or terms for years, or any uncertain interests of, in, or out of, lands, tenements, or hereditaments, shall at any time hereafter be assigned or granted, unless it be by deed or note in writing, signed by

the party so assigning or granting the same, or their agents thereunto lawfully authorised, by writing, or by act and operation of law "—so that the transfer of either the fee or possession of real estate, could no longer be lawfully made but by writing. When we add to this legislative declaration of what shall be alone considered as a lawful conveyance, the provision of the 5th section, which as to this subject, is, " That no action shall be brought whereby to charge any person upon any contract or sale of lands, tenements, or hereditaments, or any interest in, or concerning of them, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorised ;" they seem effectually to take away all remedy by action to enforce the performance, or recover damages for the breach of, any contract concerning lands ; the evidence of which exists in any other form, than that of a writing signed by the party to be charged.

JEFFERSON.<br>April, 1817.<br>Lenington<br>v.<br>Campbell.

If we look only at the statute law, there can be no doubt or difficulty in determining the construction which ought to be given to it; but when we consider that these sections are copied with but slight variations from the 3d and 4th sections of the English statute, 29th Chs. II. Ch. 3d, and that for a long course of years the English courts of chancery have considered part performance as taking cases out of the statute, have admitted proof of parole contracts, and have decreed performance of them on that principle; and also that the other states in the union, which have adopted the English statute of frauds, have adopted the English construction with it; and further, that it may be supposed that the legislature of Ohio, when they adopted this law, did so, with a knowledge of the construction which had been given to it, and with an intent that such construction should be given here; the subject becomes much more important and difficult.

Where the statute says that no lease shall be assigned or granted, unless by deed or note in writing, and that no action shall be brought upon any contract concerning lands, unless there be written evidence of such contract, it seems that the legislative power have left no room for the most ingenious sophistry and evasion to sustain a contract for the sale or lease of lands resting in parole merely. But the courts of chancery in England have considered part performance as taking cases out of the statute; one of the first cases, if not quite the first of this kind, was a bill brought to compel the defendant to make a lease according to his promise, the plaintiff having laid out money on the premises. The defendant insisted upon the statute, there having been

JEFFERSON.
April, 1817.

Lenington
v.
Campbell.

no agreement in writing, nor any certain terms settled between them; and alledged that what the plaintiff had laid out was not on lasting improvements, but admitted that he had built a stable which had cost him about ten pounds. It was proved that the defendant had told the plaintiff that his word was as good as his bond, and promised him a lease when he should have renewed his own with his landlord. The Lord Chancellor (Sir George Jeffries) said that the defendant had been guilty of a fraud, and ought to be punished for it; and decreed a lease to the plaintiff, though the terms were uncertain; and adjudged that the time for which he should hold the premises, should be in the plaintiff's election, and that he might choose to hold during the defendant's term at the old rent, and the plaintiff was decreed to pay costs. This precedent has been followed by succeeding chancellors in numerous decisions which are collected in a note to the 3d vol. Vesey, jun. Rep. 39. No court of chancery in England, would, however, at this day, decree for the plaintiff on such a case, for they would require him to make out the terms of the contract alledged by clear proof, or the defendant's admissions, or dismiss his bill; but where the terms of an agreement are set forth, and part performance is averred by the bill, they will overrule a plea of the statute or order it to stand for an answer, on the ground taken by Jeffries, that the party pleading the statute is, under such circumstances, guilty of a fraud. The extreme absurdity of this doctrine is well exposed by Roberts, in his treatise on frauds; "But" says he (page 135) "in the case of mere part performance, the fraud they go upon is the unconscientiously insisting upon the statute: the very notion, therefore, of part performance, supposes the fact of an antecedent agreement to be established, and has reference thereto. It assumes the existence of the agreement, since, as has been before said, the acts must appear to have been done with a direct view to perform a particular agreement; and thus, by a circulating process of reasoning, they *prove* and are *proved from* the agreement at the same time. To call anything a part performance, before the existence of the thing whereof it is said to be the part performance, is established, is an anticipation of proof by assumption, and gets rid of the statute by jumping over it; for the statute requires proof, and prescribes the medium of proof."

But notwithstanding the absurdity of this notion of fraud, it prevails by the weight of precedent, and this, notwithstanding their ablest judges and chancellors have almost with one voice joined in condemning it. To this effect may be cited the observation of Lord Kenyon, 1 East 194, that "it is of great consequence to preserve

*unimpaired* the several provisions of the statute of frauds, which is one of the wisest laws in our statute book;" of Lord Alvanley, 3d Ves. jr. 712, "my opinion is that the court has gone rather *too far* in permitting part performance and other circumstances to take cases out of the statute. I always tho't the court went a *great way;*" of Lord Loughborough, 2d Ves. jr. 243, "the bent of my mind is strongly in favor of the wisdom of the statute, therefore I am rather against the cases which have intrenched upon it," and of Lord Erskine, 13th Ves. jur. 474, "my opinion is, that *great mischief* has arisen out of that doctrine" (part performance) "yet I must execute what I find the law of the court." To these might be added like opinions expressed by Cowper, Hardwicke, Camden, Grose, Rosslyn, and Sir James Mansfield, and the opinion of the Supreme Court of the United States, delivered by Marshall, chief justice, in the case of Grant vs. Naylor, 4th Cranch, 235, that "already have so many cases been taken out of the statute of frauds, which seem to be within its letter, that it may be well doubted whether the exceptions do not let in many of the mischiefs against which the rule was intended to guard. The best judges in England have been of opinion, that the relaxing construction of the statute ought not to be extended further than it has already been carried, and *this court* entirely concurs in that opinion."

The English statute of frauds has been copied and adopted by most, if not all, the states of the Union, and with the law, it is believed that they have uniformly adopted the doctrine, that part performance takes a case out of the statute. This may have arisen from those states adopting the English statute laws, and from their considering the decisions of the English courts as authorities binding upon them. It must be admitted that it would not, therefore, be an *unreasonable presumption* to suppose, that the legislature of this state, in adopting this law, intended to adopt with it the English doctrine as to part performance; and if this presumption was strong and clear, I think we ought to be governed by it, for my opinion is clearly with that of Lord Macclesfield, 2d P. Wms., 258, "*never to shake any settled resolution touching property or the title of land,* it being for the common good that these should be certain and known, *however ill grounded the first resolution might be*"—but such presumption does not amount to a *settled resolution;* and as we have no judicial decisions of our own courts to aid us, we are at liberty to construe the law according to what shall appear, from the law itself, to be its most evident intention: for neither the decisions of the English courts, or the courts of the other states, have any authority in our courts; but

the authority of reason and good sense. They are read as evidence of what the law is; and, like witnesses in court, although their competency is not questioned, yet their credibility depends on the matter and manner of their testimony. With all the information we can obtain, we are bound to exercise our own judgment, to expound the laws according to our deliberate understanding of them, whether the result is an agreement or disagreement with the opinions of others.

There is a material difference between the statute, 29th Charles II, and our's: the English statute recognizes the validity of parole leases and contracts concerning lands, to a certain extent; our statute, on the contrary, prescribes a rule of evidence *in all cases whatever*, of an interest in or arising out of land; and that rule is, that such evidence shall be in writing. It renders wholly invalid and ineffectual all other evidence of title, and prohibits us from sustaining any suit unless upon such evidence. This difference between the two statutes may somewhat lessen the presumption that our legislature, by adopting the 3d and 4th sections of the statute of frauds, intended that the courts in this state should follow the English courts in explaining its provisions away.

We are in truth to decide whether we will be governed by the statute law, the text of which is free from ambiguity, or whether we will follow the English Chancellors in jumping over the statute or evading it altogether. Two things ought to combine in favor of judicial decisions, to give to them the weight of authority in another government; 1st, they should be uniform; and 2d, they should be reasonable. The English courts do not seem to have been consistent with themselves in determining what will take a case out of the statute; some have held that payment of part of the purchase money would; 4th Ves. jun. 720; others have thought that payment of part, or the whole, of the purchase money, would not be such part performance as to take a case out of the statute, because such payment admitted of compensation and retribution, 3d Ves. jun. 713—1st Schoales & Lefroy 22—7th Ves. jun. 341—some, that the statute might be pleaded in bar of the discovery of an agreement, and others that it might not. 6 Bro. P. C. 45—1 Bro. C. C. 404—2d Bro. C. C. 559. They differ, also, as to the ground and reason on which they attempt to rest their decisions. But notwithstanding there is much contradiction on those and other points, it seems clear that the case now under consideration is such an one that the complainant would in the English courts, be considered as entitled to the relief prayed for; and the reason why such relief would be given, is stated by Lord Redesdale, in a

case before cited: "Nothing" he said, "is to be considered as a part performance, which does not put the party into such a situation that it is a fraud upon him, unless the agreement be performed; as for instance, where possession is

JEFFERSON.
April, 1817.

Lenington
v.
Campbell.

taken the party becomes a trespasser, if there be no agreement; in which case, for the purpose of defending himself against a charge which might otherwise be made against him, such evidence is admissible: and if it be admissible for such purpose, there is no reason why it should not be admissible throughout. But payment of money is not part performance, for it might be repaid," &c. There is one reason, I apprehend, why such evidence should not be admitted throughout, and that is, that the statute expressly forbids it. "No action shall be brought," &c. because a *defence* to an action of trespass may be by parole evidence of an agreement to enter upon the land; that, therefore, like evidence may be received to support *an action* brought to obtain such possession, would follow, if the statute was not in the way. But why is the statute to be regarded when the part performance is payment of the purchase money, and to be disregarded when it is a taking possession of and labour done on the land? The reason given is, that payment of money admits of compensation; and does not the labour done upon land admit of compensation? Take the case before us, the complainant has gone on to the defendant's land under a parole agreement for a lease; he has cleared and fenced some of the land, and built a cabin, and is now dispossessed; his title to hold *possession* of the land, to use it for himself, cannot be made out. There is no case or dictum that I know of, which would prevent his recovering at law a compensation for his labour and expenses; and I have yet to learn that such recovery would be unreasonable; it would surely be better for courts to sustain such suits, than offer the party relief in equity, when such relief cannot be granted without going counter to the express command of a very salutary statute.

Again, "it is a fraud upon him unless the agreement be performed;" but the agreement, even supposing it made out, is a mere naked agreement, giving no right of action to enforce it.

An agreement or stipulation, which does not bring the party under any legal obligation, is to bring him under an equitable one; because, to rely on the legal defect, is a fraud. It is no wonder that the absurdity and nonsense of this doctrine has been seen and regretted by the ablest judges and chancellors in England, and that experience of the ill effects of treating cases as out of the spirit, which are plainly within the letter, of the statute, should be recalling their courts to a severer rule

JEFFERSON.
April, 1817.

Snedecker
v.
Test.

of practice. There can be no doubt, that if the weight of precedent did not control them, they would now adhere to the obvious meaning and intent of the law. By these precedents we are not bound. In supporting this plea, therefore, and deciding that part performance does not take any case out of the statute, we give to it the operation it was originally intended to have, as prescribing an invariable rule of evidence in all suits brought to recover the possession of real estate.*

Decree for the defendant.

---

* Since the above case was decided, the reporter has read the cases of Grant's heirs vs. Craigmiles, 1st Bibb 203, Chilis vs. Woodson, 2d Bibb 72, & Johnson's devisee, vs. Macconnell, 3 Bibb 1—in which the court of appeals of Kentucky, refused to adopt the construction given to the statute of Frauds and Perjuries by the English Chancellors; and held that no part performance of a supposed contract concerning land, can take a case out of the statute or be considered as equivalent to that written evidence which the statute requires to substantiate the claim of an interest in or arising out of lands.